IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| HRD CORPORATION d/b/a | § | |
| MARCUS OIL & CHEMICAL, | § | CASE NO. 11-36020-H5-11 |
| | § | |
| Debtor | § | |

## RESPONSE AND OBJECTION OF DR. EBRAHIM BAGHERZADEH TO EMERGENCY MOTION TO COMPEL TURNOVER (DOC. NO. 2)

Dr. Ebrahim Bagherzadeh ("Bagherzadeh") hereby files his response and objection to the emergency motion (Doc. No. 2) of the Debtor, HRD Corporation, asking the Court to compel turnover of funds subject to two pre-petition writs of garnishment issued at the direction of U.S. District Judge Sim Lake.

1.     On March 24, 2011, in Civil Action No. 4:10-CV-01747, *HRD Corporation d/b/a Marcus Oil & Chemical v. Bagherzadeh*, Judge Sim Lake entered a Judgment confirming an arbitration award in favor of Bagherzadeh against the Debtor in the amount of $20,829,760.63 ("District Court Judgment").

2.     On July 11, 2011, Bagherzadeh filed an application for two writs of garnishment in aid of execution of the District Court Judgment.   Ex. A. Bagherzadeh's application describes in detail the grounds for the garnishment. *Id*. Based on post-judgment discovery of financial information revealing that HRD had substantial assets subject to garnishment, but had insufficient assets subject to execution to satisfy the judgment, Judge Lake approved the writs.   Ex. B.

3.      On July 11, 2011, pursuant to the order of Judge Lake, the Clerk of the Southern District issued writs of garnishment to Community Bank of Texas and JPMorgan Chase Bank.  *See* Ex. C-D.

4.      Before the close of business on July 11, 2011, Bagherzadeh served copies of the writs, the application, the accompanying affidavit, and the order on the garnishees and on counsel for the Debtor.  Ex. E.

5.      This service was accomplished as soon as practicable following the issuance of the writs and in strict compliance with TEX. R. CIV. P. 21a and 663a. The notice required by Rule 663a was included.  Ex. E.

6.      Accordingly, Bagherzadeh complied with all legal requirements to secure a post-judgment writ of garnishment, and the writs are entirely valid.

7.      In addition, a writ of execution was issued on July 11, 2011.  Ex. F.

8.      The writ of execution was served and levied by the U.S. Marshals early in the afternoon of July 11, but HRD's principals failed to disclose that HRD had withdrawn a cashier's check in the amount of $1,050,000, payable to itself, just two hours before the writ of garnishment was served on Community Bank. Bagherzadeh filed an emergency motion to recover that cashier's check, Ex. G, which Judge Lake signed on June 12, 2011.  Ex. H.  The U.S. Marshals recovered the check from HRD's attorneys and it was deposited for safekeeping in the Community Bank of Texas account prior to the filing of the petition in this case.

9.     In response to these developments, following service of the writs and the other collection efforts, HRD filed its Chapter 11 petition on July 12, 2011. HRD now seeks to compel turnover of the funds subject to the writs of garnishment issued in accordance with the order of Judge Lake.

10.     By virtue of state law (which governs the garnishment proceeding under FED. R. CIV. P. 69), service of the writ of garnishment creates a pre-petition lien on the money and property subject to the writ.  A writ of garnishment, upon its service, is operative *in personam* as against the garnishee and is operative *in rem* upon property of a judgment debtor in the hands of the garnishee.  *See In re Olivas*, 129 B.R. 122, 124 (Bankr. W.D. Tex. 1991); *Citizens Nat'l Bank in Ennis v. Hart*, 321 S.W.2d 319, 320 (Tex. Civ. App.—Fort Worth 1959, writ ref'd); *see also* TEX. R. CIV. P. 668.

11.     Service of a writ of garnishment creates a lien on property subject to such writ from the date of service of the writ. *See Olivas*, 129 B.R. at 124; *In the Matter of Latham*, 823 F.2d 108, 110 (5th Cir. 1987) ("According to Texas case law, a garnishment lien attaches from the date of service of the summons."); *In the Matter of T.B. Westex Foods, Inc.*, 950 F.2d 1187, 1192 (5th Cir. 1992); *United States v. Standard Brass & Mfg. Co*., 266 S.W.2d 407, 408 (Tex. Civ. App.—Beaumont 1954, no writ).  Additionally, a writ of garnishment not only impounds funds in the hands of a garnishee when the writ is served but also such funds

belonging to the debtor up to and including the day the garnishee is to answer.  *See Olivas*, 129 B.R. at 124-125; *Rome Industries, Inc. v. Intsel Southwest*, 683 S.W.2d 777, 779 (Tex. App.—Houston [14th Dist.] 1984, writ ref. n.r.e.); *First Nat'l Bank in Dallas v. Banco Longoria, S.A*., 356 S.W.2d 192, 196 (Tex. Civ. App.—San Antonio 1962, writ ref. n.r.e.).

12.    A garnishor's rights are determined by priority in time, which is determined by the date of service of the writ of garnishment.  *See Olivas*, 129 B.R. at 125; *Small Business Inv. Co. of Houston v. Champion Int'l Corp*., 619 S.W.2d 28, 30 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ).  "[A]fter service of a writ of garnishment, the garnishee may not deliver any effects or pay any debt to the defendant."  TEX. CIV. PRAC. & REM. CODE § 63.003.

13.    Service of the writ places the garnished assets "within the control of the court" that issued the writ.  *Amegy Bank Nat'l Ass'n v. Southern Crushed Concrete, Inc*., 2009 WL 943758, *4 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (unpublished).  Thus, as of the filing of the petition in this case, the garnished funds were *in custodia legis* of the District Court and subject to Bagherzadeh's judicial lien.  Neither the writs nor the liens may be modified or released without an order from Judge Lake, the District Judge who ordered issuance of the writs.

14.     For this reason, Bagherzadeh is separately filing a motion to withdraw the reference with respect to the Debtor's motion and any matter pertaining to the funds subject to the writs of garnishment, the liens arising therefrom, and the use of cash collateral subject to those liens.

15.     In light of the four factors set forth in *Holland America v. Roy*, 777 F.2d 992 (5th Cir. 1985)—which are discussed in greater detail in our motion—Bagherzadeh asks the Court to withdraw the reference and return these matters to the district court.  The Court should act on the motion to withdraw the reference before reaching the merits of this motion.

16.     In addition, there is no valid basis to dissolve the writs at this time—much less on an "emergency" basis.  There is good cause to believe that, if the Debtor is allowed to regain control of its funds, it may wire funds outside the United States (namely, to its Indian affiliate).

17.     The Debtor has a history of transferring funds to affiliated entities—particularly to Marcus Oil & Chemical India, which is owned by the two principals of the Debtor (Abbas & Aziz Hassan).  *See* Ex. A.  The risk of turning over funds subject to these writs is underscored by the fact that the Chapter 11 petition fails to disclose major assets that appeared on HRD's December 31, 2010 Balance Sheet, while including literally $100 million in liabilities that did not appear on that Balance Sheet. *Compare* Petition to Ex. I.  Bagherzadeh will offer a few examples.

18.     First, Schedule B to the Chapter 11 petition lists assets of $3,892,000, but fails to disclose that a JPMorgan Chase Bank account subject to garnishment held securities valued at nearly $17.5 million according to the December 31, 2010 Balance Sheet.  Following a prolonged battle to secure post-judgment discovery, Bagherzadeh only recently received the documents revealing the securities.  Ex. I.  Curiously, HRD did not disclose this substantial asset in its bankruptcy filing, which either means that the assets were not scheduled or that they were transferred since December 31, 2010 – a transaction that would have been far outside the ordinary course of HRD's business.

19.     HRD may claim that these securities are "pledged" to another entity, but Bagherzadeh is unaware of any documentation supporting any such pledge and no secured creditors are listed in HRD's schedules.  Moreover, if such a "pledge" exists at all, it almost certainly favors affiliated entities within the total control of HRD and its two principals, Abbas and Aziz Hassan.

20.     Judge Lake is already familiar with similar behavior, as he recently ordered the turnover of patent rights owned by HRD to satisfy this judgment— rights that HRD has steadfastly insisted it owns—only to have HRD defy the order on the ground that it allegedly assigned those rights to its Indian affiliate in 2005.  *See* Ex. J (turnover order); Ex. K (HRD response).  HRD still has not complied, prompting a contempt action that is currently pending before Judge Lake.  Ex. L.

21.    These recent revelations related to turnover of the patent rights illustrate that HRD and its principals have a track record of questionable claims of security interests when it suits their interest to hide assets.

22.    Along those lines, it is notable that Schedule B does not disclose the very patent rights that are the subject of the turnover order, nor does it disclose any vehicles, equipment, machinery, etc.  But the recently-produced Balance Sheet reflects property of this character worth approximately $3.5 million.  *See* Ex. I. Indeed, during the collection proceedings, Bagherzadeh's lawyers have personally observed the plant facilities and heavy equipment reflected on these statements. Likewise, Schedule B does not disclose any inventory, but Bagherzadeh's lawyers personally observed an entire warehouse of inventory during collection efforts.

23.    Schedule F reports that Dow Chemicals holds an unsecured claim for $68 million, but fails to disclose that this is simply a disputed claim in litigation (and Bagherzadeh's lawyers are unaware of any support for its valuation).

23.    Schedule F also reports unsecured obligations to two other entities, Marcus Oil & Chemical India and Rig Runner Express, Inc., without disclosing that both are affiliated entities.  Marcus Oil & Chemical India is wholly-owned by the principals of HRD.  Rig Runner Express is owned by other family members. Curiously, the $14 million in unsecured obligations to Marcus India set forth on Schedule F did not appear on the December 31, 2010 Balance Sheet.  *See* Ex. I.

24.     This situation raises serious questions about the veracity of HRD's pre-petition financials as well as its Bankruptcy Schedules and highlights the risk that its principals will redirect funds to their Indian affiliate outside the jurisdiction of this Court if they have the opportunity to do so.

25.     Debtor's reliance on 11 U.S.C. § 543 in support of its motion is misplaced.  First, Bankruptcy Rule 7001 provides that "the following are adversary proceedings: (1) a proceeding to recover money or property..." An action to compel turnover property of the estate under section 542(a) is an adversary proceeding. *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990). The only difference here is that Debtor is proceeding under section 543 to recover property of the estate from an alleged custodian.  The result is the same: the motion must be denied because turnover proceedings must be instituted as adversary proceedings.

26.     Moreover, to the extent HRD seeks to determine the validity, priority or extent of Bagherzadeh's judicial liens, that also must be done by filing an adversary proceeding.  *In re Kinion*, 207 F.3d 751 (5th Cir. 2000).

27.     Second, 11 U.S.C. § 543 applies only to "custodians" of the property of the debtor.  In this case, neither of the garnishees are "custodians" within the plain meaning of Section 543.  *See* 11 U.S.C. § 101(11) (definition of custodian); *In re Camdenton United Super, Inc.*, 140 B.R. 523, 525 (Bankr. W. D. Mo. 1992) (holding bank was not a "custodian" for purposes of Section 543).

28.    This precise argument has been rejected in garnishment proceedings. *See Matter of Georgia Steel, Inc.*, 25 B.R. 781, 786 (Bankr. Ga. 1982).

29.    Finally, even if the funds subject to the writs of garnishment were turned over to Debtor, they would still be "cash collateral" under 11 U.S.C. § 363 and the Debtor is not allowed to use the funds without a court order authorizing such use.   The Debtor has not asked for authority to use cash collateral and Bagherzadeh does not consent to the use of his cash collateral.

### Rule 7008 Responses

30.   Bagherzadeh admits the allegations in paragraph 1.

31.   Bagherzadeh has no basis to admit or deny the allegations in paragraph 2.

32.   Bagherzadeh admits that the petition was filed at 1:47 p.m. on Tuesday, July 12, 2011, and denies the remaining allegations in paragraph 3.

33.   Bagherzadeh admits the allegations in paragraph 4.

34.   Bagherzadeh admits the allegations in paragraph 5.

35.   Bagherzadeh denies the legal conclusion asserted in paragraph 6, which is incorrect for the reasons set forth in this response.

36.   Bagherzadeh has no basis to admit or deny the allegations in paragraph 7, but doubts the accuracy of those allegations because the Debtor and its principals have a history of transferring assets among various affiliated entities.

37.   Bagherzadeh denies the allegations in paragraph 8.   Bagherzadeh filed an abstract of judgment in the real property records of Harris County, Texas at 1:35 p.m. on July 12, 2011.   Ex. M.   This event perfected a judgment lien and makes him a secured creditor.

38.     Under the circumstances, the Court should deny the motion outright, or should defer ruling until after all respondents (including JPMorgan Chase and Community Bank of Texas) have notice and an opportunity to be heard.  Finally, Bagherzadeh opposes the use of his cash collateral and Debtor has failed to seek authority to use cash collateral.

Respectfully submitted,

**BARNET B. SKELTON, JR., P.C.**

By:  /s/ *Barnet B. Skelton, Jr.*
        Barnet B. Skelton, Jr.
        State Bar No. 18456400
712 Main, Suite 1705
Houston, TX  77002-2543
(713) 659-8761
(713) 659-8764 (Fax)

**ATTORNEY-IN-CHARGE FOR
DR. EBRAHIM BAGHERZADEH**

**OF COUNSEL:**

Murray Fogler
State Bar No. 07207300
Russell S. Post
State Bar No. 00797258
Brad Coffey
State Bar No. 24026484
BECK, REDDEN & SECREST, L.L.P.
One Houston Center
1221 McKinney, Suite 4500
Houston, Texas  77010
(713) 951-3700
(713) 951-3720 (facsimile)

L. Lee Thweatt
State Bar No. 24008160
Joseph D. Terry
State Bar No. 24013618
TERRY & THWEATT, P.C.
One Greenway Plaza, Suite 100
Houston, Texas  77046-0102
(713) 600-4710
(713) 600-4706 (facsimile)

## CERTIFICATE OF CONFERENCE

I, Barnet B. Skelton, Jr., conferred with Debtor's counsel, Barbara Rogers on July 13, 2011, regarding the relief requested in the Debtor's motion, but the parties were unable to resolve the matter.

/s/ *Barnet B. Skelton, Jr.*
Barnet B. Skelton, Jr.


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this filing was served in compliance with the Federal Rules of Civil Procedure on July 13, 2011, on all counsel of record via e-file.

/s/ *Russell Post*
Russell S. Post